What did we say? Good morning. Good morning, your honors. Judge Greenaway, excuse me if I don't keep eye contact. Good morning. So I'm only going to say this because he's my dear friend and colleague. Judge, you've never looked better. I was thinking the same thing. I love both of you. Thank you for filling in due to recusal. As counsel are aware at this point, we have Judge Greenaway participating by audio. Let's be clear about that. But he is fully engaged and ready to go and we look forward to hearing his questions. This case is Anthony Luis Torres v. City of Philadelphia et al. Ms. Mossman. Thank you, your honor. May it please the court, my name is Ellen Mossman and I represent appellant Anthony Torres. I'd like to reserve two minutes for rebuttal. Very well. Thank you. We ask this court to vacate the judgment and verdict on Mr. Torres' unlawful seizure and excessive force claims and remand for a new trial. Mr. Torres was seized by a police officer on the street outside of his mother's home. He was handcuffed, transported in a police vehicle to Philadelphia Police Headquarters. How much time passed between when he was picked up and when the officers first arrived at his mother's home, went to the door or wherever it was they encountered him first, and put handcuffs on him and put him in the car to take him to the station? Your honor, I'm not sure that the record is precisely clear about the number of minutes that passed, but based on common sense I would think that that's only a couple of minutes that it would take for him to be put in handcuffs. But we have no information on that at all? I really don't believe that the exact lapse of time is in the record. Is there any record information or evidence as to whether he was asked questions at the scene of his mother's house before being put in the police car, the transport? Yeah, I do not believe that he was asked questions, but I also don't think that Officer Rosa was asked whether he was asked questions. Officer Rosa, who was the officer who picked him up on the street, was informed by another police officer that he should go pick him up and take him to Philadelphia Police Headquarters for questioning. Who told him to do that? That's also not in the record, your honor. Does it matter that there's no evidence that it was either of the named defendant officers who either made the request or who participated in the picking up and placing him into the police station? Yeah, I don't think that that does matter, your honor. Why not? Because they were part of the continuing violation of his unlawful seizure where he was detained for custodial interrogation. And they were the ones who detained him for custodial interrogation. Last question, and then I'll see if the other judges please. What is the evidence as to what those police officers, our defendants, knew about whether there was probable cause or reasonable suspicion at the time they encountered him or at the time he'd been first picked up at his mother's house? What's the evidence that they were aware of the amount of information that the police did or didn't have before they even got their first encounter with him? You mean the detectives that are at police in this case? Yes. Yes, ma'am. So, first of all, I'm not sure that it matters what they knew about probable cause because this isn't a qualified immunity situation here. We're talking about whether there was, in fact, probable cause. And so their reasonable belief as to whether there was probable cause doesn't really matter here. It's what the police knew in general. And second of all, Your Honor, I don't think that there were a lot of officers kind of involved in putting together what appellees contend is probable cause here. And the investigative work that Officer Andrews did was improperly admitted hearsay testimony. So the jury didn't even have properly admitted testimony. What was the objection to that in the record? The objection to the hearsay testimony? Yeah. I can give you a JA number. It was JA 214-215 where defense counsel or plaintiff's counsel objected to testimony as hearsay and the court overruled the objection and admitted it as background evidence. But Malone's testimony wasn't offered for the truth of the matter, was it? As I said, it seemed to be just establishing what he knew and what then guided him to take the actions that he took. The district court ruled that it wasn't admitted for the truth of the matter asserted, but we contend under this court's decisions in Salins and Price, it actually was admitted for the truth of the matter asserted. And we say that for a couple of reasons. First of all, those decisions involved admitting background evidence to show the reasons for police actions. And the reason for the police action here, the reason for Detective Perrone starting his investigation, just doesn't really matter to give the jury context here. He could have just said, I was acting on information received from another police officer and I arrived at the hospital to investigate. The background testimony wasn't necessary here. And second of all, because this officer, Andrews, didn't testify at trial, it goes to show that's one indicative nature that it was actually illegal or illegitimate backdoor eyewitness testimony. And to the extent that police believe that it was admitted to show reasonable suspicion or probable cause, first of all, they would have had to admit properly admitted testimony in order to show probable cause. Because again, it's not about whether the police had a reasonable belief that there was probable cause or reasonable suspicion. It's about whether there in fact was probable cause. And that can't be based on here state testimony. Why wasn't there in fact probable cause when they picked Torres up on the 10th? They learned a lot of information on the 8th, did they not? On the 8th, Your Honor, you mean Detective Officer Andrews learned a lot of information on the 8th? Yeah, I think by the time, or at least before July 10th, there was evidence that Tammy Hewitt was battered. There was testimony from her family that she was being abused. Torres had been witnessed behaving erratically at the hospital. Bennett's behavior was, she told multiple stories. All that was known to police before Torres was picked up at his mother's house, was it not? That's correct. But again, basically everything that you just recited was the hearsay testimony that was admitted. And Detective Officer Andrews, who was the one... All of that was objected to? All of that was objected to, yes, that's correct, Your Honor. What was the citation again for the objection? It's JA-214-215. But even if there was an objection that was timely and properly asserted, and the judge committed error in telling the jury that this was not admitted for the truth, but rather admitted because it bore on the question of what information the officers had at the time they went to pick him up, as opposed to what information the officers had at the time they decided to charge him. Okay? If he had been... Sure. Assume that was error. Yes, but he said the wrong word. He said the wrong word. He said charge instead of pick up. Pick up. Isn't it nonetheless true that the evidence was admissible without regard to its truth for the related purpose of showing whether the officers' information amounted to having probable cause to seize Torres in the first place? Your Honor, I would submit that that evidence needed to be presented in a non-hearsay manner. But for that one word that was ill-timed, that is the focus is on the undisclosed amount of time he was at the officer's house, I mean at his mother's house with the officers, which you've described to us as very short as a matter of common sense since he wasn't interrogated as far as we know, just put in the car, fleeting moment. And what the court clearly meant to ask was, was this, was I'm admitting this because it bears on whether their information amounted to probable cause when he was taken to the police station. Isn't the fact that it is in fact relevant for that enough to make it harmless when it is misstated but properly admitted, but for the misstatement for the early, for probable cause at the time of seizure? Your Honor, I would still say even if the district court did misstate itself and meant to say I'm admitting this to show probable cause at the time of seizure or reasonable suspicion at the time of seizure, the evidence, because the evidence needed to go to show probable cause, not whether the officers had a reasonable belief that there was probable cause. It still, it does go on, but the way you determine that is by looking at the information they have. They didn't equate to probable cause. Right, but that's the truth of the matter asserted, Your Honor. No, it's not. No, it doesn't mean it's actually true. It could all be, it could all be mistaken. Right. But because it was hearsay testimony, the officer who observed all of this information, collected this information, wasn't subject to process evidence. I think you need to parse that a little bit. I'm not sure you've convinced us that it was to prove the truth of the matter asserted. For example, my understanding is not that Peron so testified because, in fact, Hewitt had bruises on her, or, in fact, Hewitt's mother said she was victimized, or, in fact, that it was true that Torres was behaving erratically, but rather it was information that came to Peron as the lead on the investigation that these things happened. Irrespective of whether they were true, it was the quantum of information that Peron had at his disposal at the time Torres was picked up. But, again, Your Honor, that doesn't go to whether there was probable cause. The officer who collected that information wasn't subject to cross-examination here. It's necessary that it's true, but doesn't the fact that the officers were told this still go to whether, in fact, there was probable cause? That is, but for the fact that- Yes, I know, I understand, Your Honor. Let me give you a simpler hypothetical. A police officer is told that a guy wearing a blue hat and a white T-shirt and black blue jeans and black boots just robbed a bank, okay? And just through bad luck, some poor soul who was wearing that identical clothing happened to be near the bank shortly after it was robbed. Salons, essentially. Yeah, the police have probable cause to pick that innocent guy up, don't they? Even though all the information is wrong, but he's not the right guy. But, Your Honor, this is about the testimony that was admitted to show probable cause. And under that factual scenario, we would submit that the police officer's defense counsel couldn't submit that anonymous tip as substantiating probable cause. Your best argument for reversal or remand is not this hearsay issue. It's the jury instruction point, I presume. Yes. So let's focus on that for a moment. I presume that you concede that plain error is the appropriate standard of review. For the unlawful seizure jury instruction? Yes. No, we do not concede that. That's fine. That's the prelim. That's the warm-up picture. Okay, keep going. So then the question is, what is it specifically that counsel said on the record that mandates that we not apply plain error review on this point? Sure, Your Honor. So I would point you to JA-242, where defense counsel below said, my theory is that when he was picked up, when he was initially seized, and when he was initially imprisoned, there was no probable cause. The court says, I'm not going to charge the jury on probable cause. I'm going to charge them on reasonable suspicion. And counsel says, Your Honor, you can't detain someone for that period of time. That's reasonable suspicion is to carry stuff. I think he means just to stop someone on the street under Terry, correct? And that's at most 15 minutes. And, you know, the colloquy here is a little bit interrupted, but defense counsel or plaintiff's counsel below made clear that his position was, you have to have probable cause to detain Mr. Torres on the street and bring him in for custodial interrogation. I have those two pages in front of me. There's nothing unequivocal about it. I mean, it seems they're interrupting each other back and forth, but there's no unequivocal statement. You know, Judge, you've got to charge probable cause. I see my time's up. No, no, please continue. Answer Judge Greenaway's question. Yeah, please, and then I have a follow-up. Sure. Yes, I concede that he doesn't say you have to charge probable cause, but I would point you to United States v. Russell, where there was a similar sort of colloquy between, I believe it was the government and defense counsel about whether to give a particular charge. And there was no kind of conclusion where the district court said, you know, I'm going to charge on this, and the counsel then said, no, Your Honor, that's not correct. Instead, they kind of left it open. And that's what happened here. They just left it open. If we apply plain error. Oh, I'm so sorry. I'm sorry. Can I just follow up with one question, Judge Greenaway? Absolutely. Following up as the court later did, at a later point after this colloquy you've already referred to, if you look at JA 281, the court discusses its proposed charge, and the court turns to Torres' counsel and says, Mr. Finesmith, do you have any objections or exceptions? And there's been an exception to the excessive force charge, but at this point the lawyer says, I do not. And the question was clearly about the whole charge. And then after the charge is read, the judge has another colloquy and says, I'm done reading counsel Mortici at sidebar, Mr. Finesmith, question mark. And Mr. Finesmith says, no. And it's clearly an invitation to, you got any problems now that I've read it, as the rules provide an opportunity to voice. Mr. Finesmith says, I got no objections. Why isn't that enough for plain error? We could get to plain error, and I would say that we can show plain error, but under Federal Rule of Civil Procedure 51 and under Russell, you don't need to stand up and say objection at every juncture where the issue is brought up. This is not a failure to speak. This is, do you have an objection? I'm fine, Judge. Agreed, Your Honor. What's a judge supposed to do at that point? But he had already, in his mind perhaps, we weren't defense counsel or plaintiff's counsel below, he had lodged the objection with the judge. He had said, Judge, reasonable suspicion doesn't apply. And the judge said, I'm going to charge the jury on reasonable suspicion. Case closed. Utility. Yeah, and so every time it's brought up subsequently, and there were multiple colloquies, and there was the discussion of the jury charge, and there was then, of course, the jury charge, he could have brought it up each time, and perhaps a prudent lawyer might have brought it up again, but I think that that initial colloquy was enough. Joe, can you say anything? Now we see Judge Greenaway, and he looks fabulous. He does. I don't. Thank you. He's right next to you. You can see him. Judge Greenaway, did you have a follow-up question too? Actually, I just wanted to put to bed excessive force, if we could just turn our attention there for a moment. Counsel, on the excessive force instruction, here's what I don't understand. As I understand it, the district court gave the model instruction of the Third Circuit. What are we to do with that? If a district court gives a model instruction, are we to say, you know what, we want to change our own instruction, and it's error to do that? What I would say to that, Your Honor – I'm trying to put this one to bed. If you convince me that I should not, I'm happy to hear it. Okay. The pattern jury instructions that this circuit provides are very helpful, of course, but they only serve the purpose if they fit the factual pattern of the case that's presented. Here, this excessive force case is significantly different from the typical excessive force case. The typical one is where there's a scuffle between the police and a suspect or an inmate and guards, and everybody agrees that some physical force was used.  The situation here is just totally different from that. The dispute isn't over whether the force that was used was reasonable. The dispute is whether force was used at all. Appellees have never said, you know, he pointed his finger, and that was threatening, and therefore – But you still have to prove excessive force. Even if they lied and they did use some force, but it was de minimis, they still won the case, right? You just proved that they're liars, but you haven't proven that they committed a constitutional tort. And they don't have to believe what Mr. Flores says either, do they? Who, the jury? I know he says he was the only evidence, but there's also evidence that he was nasty to the officers and that at one point he was waving his arm, and the force he alleged was to his finger. Yeah, the evidence is that he raised his hand and he pointed. And yes, the jury is of course the ones who are ultimately to make this decision, but the district court itself recognized that under these circumstances, the type of force that Mr. Torres alleged would not have been reasonable. And then in the face of an objection, he kind of weakened his instruction on that, and instead of saying, you know, if you believe that Mr. Torres, if you believe that force was used against Mr. Torres, it would be excessive force, it may be excessive force. And that didn't really do anything, because of course under a reasonableness standard, they're allowed to find that anyway. And we would just submit that the Fifth Circuit got it right here, that if a suspect poses no threat to police officers, then any use of physical force is per se unconstitutional. Did the officers say he was no threat to them? Did the officers say that he was no threat to them? The officers didn't say that he was a threat to them, which of course I recognize is different. But there's no evidence on that? Correct. There's no evidence that he posed a threat. So that means there's no evidence in which you can pose or draw a negative inference. So I'm sort of not getting your argument. Okay, using the pattern during instruction was wrong, but there's no evidence in the record that the defendants could have drawn on to draw a negative inference against your client, so what's the error? I'm not sure I understand what you mean by negative inference. Well, you're saying that the court gave an improper instruction because of its use of the term force, as it was used in the instruction. And Judge Rosenblum's question is, is there anything in the record from which we could either infer or conclude that there was force? In the absence of that, what's the error in the instruction? That's the point. Well, there was testimony that force was used against him. Is that your question? Mr. Toyce testified that when his finger was raised, Detective Jenkins hit it and broke his finger. So the jury didn't believe? We don't know whether the jury believed. We don't know whether the jury didn't believe that that happened or whether the jury believed that it happened and believed that that use of force was reasonable under the circumstances. But either way, then it's harmless error. If there was an altercation, but the force used was reasonable and or justified, then it's harmless error. But we're saying that the force used can't have been reasonable or justified because he posed no threat. Well, okay. All right. Can we go back to illegal seizure for a minute? Sure. Because the trial lawyer for Torres puts forth a variety of claims and there's sort of a continuum as reflected in the judge's first jury interrogatory. So the continuum is illegal seizure, which I have in my mind a terrorist stop, right? And then you've got false imprisonment, and then you've got false arrest. And unlawful arrest, correct. Unlawful arrest. Under both state and federal law. Right. So what's troubling me a little bit about this case is that it appears that the illegal seizure slash terrorist stop claim, the law was properly given because we do know that you need reasonable suspicion for that. But what's troubling is that that doesn't map onto the facts of the case. There's just no testimony in this case to show that there was ever an attempt at a terrorist stop because we know going to Torres' house, putting him to the ground, cuffing him, and bringing him downtown, whatever that is, it ain't a terrorist stop, right? Right. So we have this strange circumstance where the law is correct, but there is a disconnect between the instruction and the facts induced at trial. Do you have any case law to tell us why a correct statement of the law that's not germane to the facts proffered at trial is reversible error? Particularly under plain error. Okay. Off the top of my head, I don't have any case law about that. But, I mean, a reasonable suspicion instruction was just not proper here under any circumstances. Yes, it was the correct legal instruction if reasonable suspicion applied. But it's the law that maps perfectly onto your claim as attorney. I know you didn't do it, but your predecessor's claim, I guess he should have given up on that claim, right? You can have an unlawful seizure under Dunaway that is subject to probable cause. Just because it's termed unlawful seizure doesn't mean that reasonable suspicion automatically applies. So, you know, I don't really think that... I never heard counsel Mr. Feinsmith say that reasonable suspicion is the wrong standard for illegal seizure. What I heard him say in the record is, look, at some point this became an arrest, and for an arrest you need probable cause, and nobody disagrees on that. I don't think it was at some point, though. I think it was from the beginning. You see, now you've honed right in on my point. With the benefit of hindsight, it's a lot easier for us looking at the record. He's in the heat of battle. But looking at this record now, he just never should have put forward an illegal seizure claim. He should have said on July 10th when they grabbed my client at mom's house, that was a false arrest that required probable cause, judge. And I don't want to hear any instructions of this jury about illegal seizure, i.e. Terry stopped reasonable suspicion. That's not part of this case. But that's not the way it happened. No, they got very convoluted in this long timeline of evolving claims that... I guess what I'm saying is he wanted to sort of have his cake and eat it, too. He wanted to have all the potential cause of action up on the board. I don't think he did want a... I don't think he wanted an illegal seizure claim under a reasonable suspicion standard. If you look at the jury instruction... No, he didn't want a new standard, but he wanted the cause of action. Right. He wanted three bites of the apple, even though he wanted probable cause across the board, because there was for that purpose only one event. And he wanted to divide it up into three events. He gets took, he gets police stationed and detained, and later he gets formally charged. Three events. And there are... there's an illegal seizure, there's an illegal imprisonment, and then there's an illegal arrest when he gets charged. But he wants three bites of those apples, three causes of action, but he wants probable cause across the board, and the judge is trying to map three causes of action onto what the standard is, and there's a disconnect, and that's the problem. Well, I think that he could have had... Isn't your best thought... Oh, sorry, Your Honor. No, go ahead. I'm sorry. Go ahead. I think that he could have... there are three valid claims here. One of them, I think, has a little bit of a heck problem, but it seems that the district court was willing to give an instruction on false arrest at the time, false arrest slash unlawful arrest under both federal and state law at the time he was charged. And so that, to me, is one distinct claim. That's its own false arrest. He also wanted a false imprisonment charge, which, you know, there are reasons for that. And then he wanted the unlawful seizure to cover the time from when he was picked up on July 10th through when he was charged to cover that period, that unlawful seizure there. And I don't think that just because he was requesting, you know, multiple constitutional violations for, theoretically, and again, I think that there's a heck problem on the false arrest claim for July 13th, but, of course, we're not arguing that here. It was valid for him to request these three seizures. What was invalid was for the district court to give the wrong instruction on the unlawful seizure claim under Dunaway. But what case says that the legal standard for illegal seizure slash Terry stop is probable cause? Right, but this wasn't a Terry situation. But illegal seizure, I mean, are you saying that the illegal seizure claim is identical to the false arrest claim in that they both require probable cause? No, not at all. I'm just saying that this is an unlawful seizure claim under Dunaway, which applies here and requires probable cause. And then you have a false arrest claim from when he was subsequently charged on July 13th that, again, we're not contesting here, but that's the two separate false arrest. I mean, we're getting into semantics here, and this was a problem before the district court, too. The judge clearly was trying to grapple with the simultaneous desire for three clauses of action, didn't want to confuse the jury and the existence across the board that your predecessor lawyer was trying to argue for, for a unitary standard. And I think the result is that there is an objection, but then Mr. Feinsmith says, I don't have any objections, so we're back in the probable cause, in the plain error, if that's right. And if that's right, then it's really hard to see how this error was playing, given the confusion. And that's what I think we're struggling with. Well, and I would say the error was playing because there's controlling Supreme Court precedent that says that probable cause and the facts of this case and Dunaway are nearly identical. And the error was playing because probable cause didn't apply here, and the error was judicial. Aren't you relying on Lovetto as well? Yeah, Lovetto. Is that how it's said? Yes. But I would certainly rely on that as well, but the Supreme Court's decision in Dunaway is pretty clear. Lovetto just applied it to a Section 1983 claim, which, of course, the Fourth Amendment jurisprudence has always come into Section 1983 claims. And the error was prejudicial because reasonable suspicion and probable cause are quite different standards here, and it's quite possible that the jury would have found for him under a probable cause standard where they didn't find for him under a reasonable suspicion standard. All right. Thank you, Ms. Mosser. We'll hear you on rebuttal. Ms. Brewer? May it please the Court, Elise Brewer on behalf of Detectives Pitts and Jenkins. I'd like to begin with the standard, some of your conversation with Ms. Mossman and Judge Rosenthal in determinant, the standard to apply to the Fourth Amendment seizure instruction. At a minimum, we have plain error because there was no objection at the jury charge conference or after the charge was given. Why isn't Dunaway controlling? Whether or not Dunaway's controlling, I think that in terms of looking at the standard, I think we have a plain error standard. And in terms of whether Dunaway's controlling or Dunaway's not controlling, we have probable cause, both at the time of the July 10th when Officer Rosa, not Detectives Pitts and Jenkins, picked him up, and also from July 10th to July 13th. Judge Greenaway, plain error matters if the error's prejudicial, or even if TOR has preserved the objection, Rule 61 still applies. And so either way, there's no reversible error here from the seizure instruction. So giving the wrong instruction, no probable cause, and giving reasonable suspicion, even under, I understand plain error's obviously a higher bar, but how is it that that bar is met? That's what I'm not getting. It clearly should have been a suspicion. If you agree that Dunaway's controlling, how do you get past that? Why shouldn't it be a remand? There shouldn't be a remand because there's probable cause as a matter of law. So does that mean that there's no deprivation of substantial rights that is so egregious as to undermine the fairness, integrity, or public reputation of the judicial proceedings? Yes. So it flunks the third and fourth prongs of Olano. Is that your argument? Yes. Yes, that basically the district court should have granted O Rule 50 on the Fourth Amendment claim. Well, I thought you were going to argue they should have granted, he should have granted O Rule 50 because Jenkins and Pitts had nothing to do with it. Well, that as well. A great question in this case is why is it Rosa in the soup here? Rosa's the one that picked them up. I don't know. Yeah, and O Rule 50 had two points. The first is the point you're mentioning, Judge Hardiman, that they didn't pick him up. The second was the probable cause point. So if I can get to the question that the conversation you were having on the initial seizure, first of all, Officer Rosa was the one who picked him up, not our two defendants here. And going to Judge Rosenthal's question, for that to happen you need either actual knowledge or acquiescence for them to be liable for his actions. Now, we don't have that on this record. That's number one. I think we win for that reason alone.  Judge Greenway. Yes, Judge Greenway. I'm sorry. That's okay. It's harder on the screen. My question to you is, even assuming that, when you're looking at Jenkins, and assume for a moment that the only liability that could be ascribed to them begins when, according to them, they walk in, there's a substantial period of time after that that Torres is in the room and he's not free to leave. Let's say the beginning of potential liability starts then. Why isn't that, from there on, an unlawful seizure? Because at that point, we have probable cause as a matter of law, either due to Bennett's statement where she said to both Pitts and Jenkins she saw Torres hitting Hewitt and hit her in an abusive relationship, threatened to kill both of them, and that he directed her to lie. So at that point she's made her statement. She's made her statement. And there's probable cause as a matter of law for a murderer. Before that point, we don't think there's anything indicating that they spoke to him before they spoke to Bennett. But even so, even prior to that point, on the record, undisputed facts, we have probable cause as a matter of law, maybe not for murder, but for what Detective Perone testified that he knew, that she had been severely beaten because he spoke to hospital staff, they confirmed that, severe internal injuries consistent with a beating. But Ms. Mossman says we can't accept those as true because, by definition, the judge admitted them not for the truth of the matter asserted. But we're looking at probable cause here. It doesn't have to be true. It has to be... But if it's fantasy, how can it be rise to probable cause? But it's objectively reasonable facts that are present at the time. And Detective Perone at the probable cause... It's not a good faith issue. Yeah, it's not a good faith issue. And thank you, Judge Rosenthal. It's that Detective Perone could rely on the investigation of other officers, Officer Andrews, and also his own investigation. It didn't have to be true. That's... Salons is a criminal case. It's whether he's guilty beyond a reasonable doubt. Here we're looking at probable cause. Should they have arrested him? Should they have held him? Should they have picked him up? That's a very different inquiry. The police don't have to be right. That's why it's probable cause. But if we're just talking about the liability of Pitts and Jenkins, why aren't we asking what did they know? Well, they... If we look at 187, which is Detective Jenkins testifying, he was brought in based on the information we had, so they knew about the prior investigation, plus they had their own discussions with Ms. Bennett. That's enough. The records are critical, is it not, as to... We know that Pitts and Jenkins interviewed Bennett in the sergeant's room across the hall from the interview room. Yes. That's pretty clear. Yes. But we're unclear on the timing. We've got a signed statement at 930 at night, and Mr. Feinsmith did a pretty good job, I thought, of trying to shoehorn the fact that, hey, you didn't really talk to Bennett until the night, and Torres, you went in and tried to talk to him earlier, or did talk to him. We don't have a clear record on the timing, other than the officer saying we gathered information from Bennett before we actually did down and did the formal written statement. Is that a fair characterization of the record? That's fair, because there is that dispute, and we acknowledge that in our brief. But our point here is that it doesn't matter. We either have the information that Bennett gave them, and that takes care of the 10th through the 13th, or even in that equivocal period, we still have the overarching investigation, which also creates probable cause to hold him as a matter of law, maybe not for murder, but certainly for some pretty serious crimes. But how does that argument help when your adversary poses that it's plain error to have the improper instruction on reasonable suspicion? Because, you know, whether there's probable cause or not, how does that help when the judge gives an improper instruction? If the judge gave... Harmless error, is that what you're arguing? It's not plain. It may not be harmless, but the question is whether it falls somewhere in between them. I gather that that's your connection. Yes. That is, how do we ever... I mean, this is... If we assume that this instruction really did fail the map, as Judge Hardiman so helpfully put it, and I think that is helpful, and that even though this is a model penal lay, model penal model pattern instruction, that there's still only that, there are patterns, and they have to be adapted... Sure. ...accurately, and there was a disconnect here. Let's assume that it is error. Why... What more would be needed to make it reversible error? What more would be needed would be basically a different record. You have to show that this is either so prejudicial it affected the outcome of the trial... Well, let's assume they didn't have Bennett's statement. Right. Okay? So they didn't know that she had testified, she had essentially confessed, what I told you earlier was a lie, and I lied because he made me, and he made me because he was the one who beat her, and by the way, he's beaten me, and therefore there is, on top of the nature of the injuries, the police officers all look up and say to each other, now we have probable cause, we didn't five minutes earlier, is that, if that had not occurred until the next day, after Jenkins and Pitts encountered him and kept him there... Right. ...would that have been enough? No. No. I think we still, it's a hard case for us, I'm not saying it isn't, but we have enough, based on Detective Perone's testimony, both to pick him up, although we have the other argument, they didn't do it, so up until their involvement, but in terms of the rest of the record, it's still there. Let me ask you this question. What's the law that suggests that Torres' detention after Pitts and Jenkins are involved required only reasonable suspicion? There isn't. What we're saying is that you need that, we're not disputing the probable cause at that point. We can talk about it with Officer Rosa. What we're saying is that probable cause was necessary. We're all talking probable cause. What we're saying is that it's there. Whether it's there or not, isn't that irrelevant? If you don't tell the jury that's what they have to find, and actually what you ask them to find is a lower standard than probable cause? What we have here, Judge Greenaway, was a combined instruction. We're saying unlawful seizure, false arrest, false imprisonment. The judge parsed reasonable suspicion, false arrest, and false imprisonment. What we're saying is that the judge should have, in an ideal world, Mr. Finesmith would have made a more, shall we say, nuanced presentation to the district court, and it would have been probable cause from start to finish. But Mr. Finesmith wanted a range of claims, and the district court tried to address that range of claims. The government didn't even really object. No, no. We're saying, in for a penny, in for a pound. You wanted this kind of combined approach. You said you were happy with what the district court did. Do you object to that? No, I think it's fine. In that kind of situation, we're saying the error is not plain. Part of it is that it's invited, but part of it is that acquiescence, but also because the record that was presented. So, and we have, you know, we've kind of parsed the Officer Rosa portion and the 10th through the 13th portion. That's where we're at with that particular portion of this appeal. And as far as the excessive force instruction is concerned, because I noticed you had a conversation about that with Ms. Mossman, first, tourists didn't object. Defendants objected. So we're in plain error territory again. And in the model jury instruction, what we are saying is that that was not erroneous. The jury was asked to look at reasonableness. That goes to the obligation to tailor. The obligation to tailor. And this kind of nuance, whether it's where or something else, is encompassed in that reasonableness language in the model jury instruction. If you don't ask for it, that doesn't necessarily mean it's wrong. And also that language is capacious enough and told the jury what to do. And here we have defendants saying, we didn't do it. And, you know, plaintiff says they did it. And that's why it goes to the jury. And the jury decided against Mr. Torres. And in terms of the evidentiary issues that have come up, we'll rest on our griefs unless there's further questions from the court. Okay. Judge Greenaway, any further questions from this group? No, thank you. Okay, thank you, Ms. Brooks. Thank you very much. We'll hear Ms. Mossman on rebuttal. Thank you, Your Honor. I just want to make a few quick points about this whole whether you can find on probable cause thing here. We would submit that this court doesn't decide cases that weren't found by the fact finders below. Nor was there a legal determination for this court to review. The jury is – We can affirm for any reason on the record that's one of the challenges appellants always face. Well, of course, Your Honor. But the jury wasn't presented with an opportunity to find probable cause. And the district court didn't find probable cause and, in fact, said that it didn't believe that the police had probable cause to arrest Mr. Toyce at the time he was brought in. That's at JA-277. You're saying that that should give us some hesitation, the fact that the district judge on three separate occasions said, I don't think they had probable cause to pick him up on the 10th. Sure. If it gives you hesitation, I'll take it. But what I'm saying is that if they had moved for a directed – as they did move for a directed verdict, there was never a ruling on a directed verdict on that point. But the district court very well would have denied it. Yes, so what do we do then? As a reviewing court, aren't we obliged to consider the quantum of evidence put to the district court at the time the Rule 50 motion was made and ask ourselves whether that was error not to – To not rule on it. Yeah. Or not rule in favor of the government. I mean, if it was not ruled or not ruled in your favor, you wouldn't either way. Well, I would point out that since there's no ruling, there's no district court decision that can be reviewed here. You're looking at cold facts on a cold record where the fact finder didn't make a determination. I'm asking, aren't we obliged to do that? Isn't that our role? I would submit that it's not. I would say that an appellate court sits to review decisions that were made by the courts below, and there was no decision that was made. But if you're inclined to – His decision was to punt. I mean, don't we have an obligation to determine whether his decision to defer ruling on the government's Rule 50 motion was correct or incorrect? I'm out of time. Do you want me to continue? Sure. Well, I would present, first of all, that that hasn't really been a theory that was argued here, that the district court was incorrect in not ruling on the Rule 50 motion. That's where you're running to that we can affirm on any grounds. I know. But I'd be remiss if I didn't point it out. I know. All right. Go ahead. And sure, okay, so we can get to the merits of whether or not there was probable cause, because that seems to be where you'd like to go. Yeah, that's what we're asking. It's a tricky – it's a tough case on a lot of levels. Yeah, and I think that, you know, he got there on the morning of July 10th. And so I think Ms. Bennett's testimony is out. We don't know when that testimony was given to the officers. All we know is that it was given sometime prior to when she signed the statement at 935 p.m., right? So I don't think that we can say that that gave them probable cause to pick him up and have him at the station beginning at that point. And, again, I would go back to all of that information that was admitted about Officer Andrews' investigation. Officer Andrews was the one who needed to testify about that. If this is what they're resting on for probable cause, I mean, it's hearsay within hearsay, hearsay within hearsay, just two levels. Because you have statements of hospital workers. You have statements of Bennett. And you have Torres' own statements, which, of course, are admissible. But those given to Officer Andrews, and then Officer Andrews gives her statements to Detective Perrone, who was the one who testified about it. Now, if Officer Andrews were here, had testified at trial, and had said, I learned from this and this and this, we wouldn't have an objection here. But Mr. Torres wasn't even able to ask Officer Andrews, did you even talk to the person at the hospital? Because Jenkins and Pitts were not the ones making the decision to pick him up. They were the ñ they did encounter him shortly thereafter in the jail, although we don't know when. Right, but, I mean, I believe that Appellee's argument is that there was probable cause, regardless of, you know, your involvement. Right, you're right. And so going into all of this previously admitted testimony, it's just ñ it's hearsay. And if that's all that's going to give ground to probable cause here, it needed to have been tested. Thank you. Thank you, Ms. Mossman and Ms. Buhl. And the Court thanks Mr. Steinberg, Ms. Mossman, the Deckard firm, and the University of Pennsylvania Law School for your pro bono representation in this case. Thank you. The case was very well argued and briefed by both sides. The Court will take the matter under advisement. Thank you, Your Honor. Mr. Steinberg, the Court stands adjourned. Did they say anything to you? No. Are they coming back in the courtroom? Why don't you take a break? No. You can go to the courtroom. Judge? Yes. Judge Hardiman said he'll give you a call. All right. Tell him to wait a couple minutes since I'm not in chambers. Okay. Thank you. Thank you.